TATE, Judge
(dissenting).
The majority has reversed a trial court fact-determination by sleight-of-hand mathematics, not by law nor by reason of evidence in the record.
To recapitulate the facts accepted by this appellate court as correctly found by the trier of fact: The defendants’ (the Sum-merall) truck struck the plaintiffs’ decedent’s (the Pitre) car in the latter’s lane of traffic. By actual measurements based on an insurer’s investigation within minutes of the accident, this point of impact was 213 feet north of the stop-sign at which the decedent stopped. Tr. 111. The Summerall truck was approaching the scene at a speed of 45 mph prior to the time that the Pitre automobile turned onto the main highway at this Y-interseetion, after first having stopped at the stop-sign.
The question at issue is whether the decedent Pitre was contributorily negligent in having entered the highway when he did? This question, of course, must be resolved by determining (a) whether Pitre drove onto the main highway when his entry thereupon was safe and reasonable because of the distance of the oncoming Summerall truck from the intersection, or (b) whether, on the contrary, he entered the highway when the truck was so close to the intersection as to precipitate the accident or contribute to it.
The defendants produced the testimony of their truck driver and a following motorist, as well as certain corroborating physical circumstances, in the attempt to prove that the decedent Pitre entered onto the highway in the immediate path of the track — or, as the truck driver testified, when his truck was just 75 feet distant, Tr. 91.
The trial court, however, accepted instead the testimony of the decedent’s passenger, Aldus Bertrand, that the decedent had entered onto the main highway when the truck was a greater distance away, and that the decedent’s car had proceeded some 70 to 75 feet in its own lane before the accident occurred, when the defendants’ truck suddenly veered into the plaintiffs’ decedent’s traffic lane. This version was also substantially corroborated by the physical evidence found by an insurance investigator immediately after the accident, including skidmarks, scarring of the pavement, etc., which indicated that the point of impact was some 213 feet north of the stopsign, or 165 feet north of the traffic light; rather *407 than closer to the apron of the intersection as testified to by the truck driver.
The majority pays lip-service to the trial court’s evaluation of credibility and accepts Bertrand’s account of the accident, it says. How, then, does it reverse?
The majority reverses by a process of legal reasoning sometimes seen of late, which for want of a better name I can only denote as “appellate mathematics”. This consists of picking out some isolated numerical estimate in a witness’s testimony, such as to speed or distance or time, and then — as if the estimate was measured by the witness at the time with stop-watch accuracy — , proceeding to calculate by some arithmetical formula with seeming mathematical precision just what the appellate court wishes to prove happened or ■did not happen. In the process, all sworn evidence contrary to what is thus “mathematically” proved must be disregarded.
The course of appellate mathematics can never be taught in the law schools, unfortunately, because one cannot predict in advance just -which of the witness’s estimates of time, speed, or distance will be used in the mathematical formulas by which truth is to be ascertained and justice to be apportioned, no matter what the other sworn evidence in the record. Somewhat like the use of statistics, appellate mathematics is used to prove what the court wants to prove —other estimates of the witness inconsistent with this predetermined hypothesis are simply disregarded.
The use of appellate mathematics to decide cases has the great virtue of producing smooth-reading appellate opinions, in which the factual conflicts are resolved with seeming absolute certainty, and as to which we can seem to write “justice is done” with the same finality as in college days we could mark “Q. E. D.” to correct solution of mathematical problems,- — quod erat demonstra-tum (that which was to be demonstrated; or, roughly, “it has been proved”, announced with solemnity).
When appellate mathematics of the nature I have described is used to reverse trial court determinations, however, it has the great demerit of substituting imaginary speculations and suppositions of the appellate court for sworn evidence accepted as correct by the trier of fact. While this sort of reasoning might be fitting to solve imaginary problems of detective fiction, its great demerit when used on appellate review by a court of law, is that it debases the appellate process to a guessing game (on which estimates will the decision turn?), instead of such review being a conscientious weighing of whether or not on the whole record, the trial court has committed error.
I can perhaps best illustrate this by describing the miscarriage of justice produced herein by the use of appellate mathematics in the majority opinion.
As we have said earlier, the real question to be decided is, how far from the intersection was the defendants’ truck at the time the decedent Pitre drove onto the highway?
The majority says it finds no error in the trial court having accepted the version of the plaintiff’s witnesses, notably the testimony of the passenger Bertrand, over the version to which the defendants’ witnesses testified.
The majority then determines that, even under Bertrand’s version, the accident was at least partly caused by Pitre’s negligence, because “According to our computations, the Pitre vehicle must have entered U. S. Highway 167 less than 250 feet in front of the approaching Summerall truck.”
The majority announces that this conclusion (which is supported by absolutely no testimony in the record) is based upon “considering”, inter alia, (1) “the speed at which each of vehicles was being driven” (which the majority has previously announced to was “20 to 25 miles per hour” for the Pitre vehicle, and 45-47 miles per hour for the truck) and, (2) “the distance that the Pitre car traveled on U. S. High *408 way 167 before the accident occurred” (apparently accepting the passenger Bertrand’s estimate that before the impact the Pitre car had driven 70-7S feet after straightening out in his lane of traffic).
Although the majority’s computations are not carried in the body of the opinion, it apparently assumes that, while the Pitre car had covered the distance of about 80 feet at 20-25 mph (22[4 mph average used), the Summerall truck must have covered 160 feet at 45 mph (i. e., twice as much, at twice the speed), and therefore the Pitre car "must” have entered the highway when the Summerall truck was less than 250 feet away. Q.E.D.
In the first place, even assuming (as the majority incorrectly does), that the Pitre car had only covered 80 feet from the time it first entered the intersection, the assumption of an average constant speed of 22[4 mph is obviously faulty, since the Pitre vehicle started from a stop. If, for instance, the average speed of the Pitre vehicle was less than 22[4 mph, then the Summerall truck was further away when Pitre entered. If Pitre’s average speed, for example, was llj4 mph (starting from 0 and working up to 22j4 mph at 80 feet), then the Summerall truck, at its constant speed of 45 mph, trav-elled four times the 80 feet travelled by the car during interval, or 320 feet (instead of only twice the distance, as “calculated” by the majority). Thus, under this changed assumption, the Pitre car entered the highway when the truck was 400 feet distant, or presumably safely in advance thereof. Q.E.D.
In the second place, it is almost unbelievable that the majority should use a figure of 20-25 mph as the speed of the Pitre vehicle in any sort of reasoning presupposing the accuracy of this estimate to be so absolute as to discount other sworn evidence. The sole evidence upon which this is based is the testimony of the witness Bertrand as to his uncertain estimate as to the top speed the Pitre car had reached just before the collision, which is found in full at Tr. 155 as follows:
“Q. I want to know how fast he [Pitre] was going before he cut to the left ?
“A. I really couldn’t tell you exactly no, sir.
“Q. I know you couldn’t tell us exactly but could you give us some rough estimate?
“A. Maybe between twenty to twnety-five miles an hour. I don’t know exactly.”
As noted above, in the majority’s formula the distance of the Summerall truck away from the intersection at the time of Pitre’s, entry, depends on the speed of the Pitre car —the slower the Pitre car’s speed in travel-ling the 80 feet on the highway before the impact, the further away the Summerall' truck was at the time of entry. It is obviously error to base a reversal of the general version of the accident and general finding of the facts, upon a “mathematical” formula depending for its accuracy upon so uncertain and indefinite a variable as this sort of non-estimate of speed.
But, what is perhaps the greatest deficiency in this use of appellate mathematics by the majority, is its arbitrarily seizing on one relatively insignificant estimate, and completely ignoring not only all the other sworn evidence, but also even other estimates (possibly equally inaccurate, it is true) in the testimony of the same witness,, insofar as they cannot be reconciled with the “mathematical” formula used by the majority to dispense justice.
For instance, the sarne witness Bertrand testified that, after the Pitre car had gotten into the Pitre lane of the main highway, Tr. 161, he first saw the Summerall truck, and it was then in its own right lane and “Possibly two hundred feet [distant] maybe something like that, I don’t know exactly”, Tr. 171; shortly after wards, the truck crossed' *409 over into the car’s lane, six or seven car lengths away. Tr. 161,171.
If we give this distance estimate the same weight the majority gave the speed estimate, we find that, at the time of impact, the plaintiff had travelled at least 165 feet from the time he entered the intersection. (See the majority’s finding that the impact occurred 165 feet north of red traffic light inhibiting entry; actually, the point of entry is somewhat more distant.) After straightening out in its lane, the Pitre car had then travelled some 70 to 75 feet down the northbound lane of the highway before the impact. (See the majority’s finding — we will •use 80 feet in our formula, however, just as the majority did in Us, and since it will be '“fairer” to the defendants.)
Now, to use our own appellate methe-matics:
If we use the witness Bertrand’s estimate that the Summerall truck was still 200 feet distant at the time the Pitre car straightened out on the highway (some 80 feet before the impact), we find that the Pitre car had travelled 85 feet from the stoplight to the point at which it straightened out on the highway; at which time, as stated, the Sum-merall truck was still 200 feet distant.
If indeed Pitre’s average speed was 221/4 mph as he covered this distance, during this same time the Summerall truck at 45 mph had travelled twice this distance (or 170 feet) and was thus 370 feet away at the time the Pitre car made its entry, which I assume is a reasonably safe entry. Q.E.D. Or if we assume Pitre’s average speed from a stop was not 22i/2 mph, but instead 1114 mph, then the Summerall truck at 45 mph covered 4 times this 85 feet, or 340 feet, so that the Pitre car made its entry onto the intersection when the truck was 540 feet •distant (i. e., the 340 feet, plus the 200 feet it was still distant when the Pitre vehicle straightened in its lane). Q.E.D.
Appellate mathematics can thus be used to produce either contrary determination of facts, depending upon which estimates are arbitrarily selected in the formulas arbitrarily used.
It seems to me that, if appellate mathematics is to be used at all as a rough corroboration of the accuracy of a witness’s testimony, the latter formula (used by the dissent) at least has the merit of corroborating the general sense of the Bertrand witness’s testimony, to the effect that entry onto and across the highway into the Pitre lane was made by the Pitre vehicle when the truck was still a considerable distance away.
The majority professes to accept the trial court’s favorable evaluation of the credibility of this witness; but it entirely distorts the effect of his testimony by seizing on an insignificant and uncertain estimate in it, and then applying appellate mathematics to reach a result as to which no witness testified:
The defendants’ truck driver, the other witness to the accident, said that Pitre came out in front of him when he was just 75 feet distant; the plaintiffs’ witnesses testified that the truck was so far distant that it was still 200 feet away after the Pitre car had completely straightened out in its own lane after crossing the wide-Y intersection;— but the majority, from nowhere, produces the figure that the Pitre car entered the intersection when the truck was just under 250 feet distant.
The majority’s reversal of the trial court is thus not based upon evidence or law, but merely upon suppositions and hypothets. If the majority had come straight out and stated that it believed the defendants’ witnesses and not the plaintiffs’, at least the basis for the decision would be clear, and all the cards would be on the table (even though the majority might be wrong in substituting its evaluation of credibility for the trial court’s). Instead, the majority has reached its decision by mumbo-jumbo and magic, using a trick deck and cards from the sleeve, producing a finding of fact by appellate mathematics picked out of the air, *410 instead of upon the actual sworn evidence in the record.
In thus reversing trial court determinations of fact, the majority has committed a serious error of law, in my opinion, and one which this dissent, with perhaps undue length, has attempted to demonstrate is faulty and unjust, with the hope that such improper use of appellate mathematics will be inhibited in the future' — if not by the self-restraint of the intermediate courts, then by the direction of our Supreme Court.
I respectfully dissent, therefore, from the denial of a rehearing.